IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA BAXTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 1:09-CV-1078-TFM |
| MICHAEL J. ASTRUE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq.*, Cynthia Baxter ("Baxter") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review, the decision became the final decision of the Commissioner of Social Security ("Commissioner").  Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court AFFIRMS THE COMMISSIONER'S decision.

### I.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

1

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[1]

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

>   (1) Is the person presently unemployed?
>
>   (2) Is the person's impairment(s) severe?
>
>   (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]
>
>   (4) Is the person unable to perform his or her former occupation?
>
>   (5) Is the person unable to perform any other work within the economy?
>
>   An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
[2] This subpart is also referred to as "the Listing of Impairments."
[3] Though a supplemental security income case (SSI), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), applies the sequential process applicable to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

2

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), quoting 42 U.S.C. §405(g). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote* at 1560, citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm if the court would have reached a contrary result as finder of fact, or if evidence preponderates against the Commissioner's findings.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Baxter, age 48 at the time of the hearing, completed high school in regular classes.  She has no past relevant work and has not engaged in substantial gainful work activity since the application date of April 20, 2007.  Baxter's application claims she is unable to

work because of problems with her right knee and foot, and stomach problems.[5] During Baxter's administrative hearing, she also stated that pain in her arms and wrists were additional reasons she cannot work. Baxter uses a walking cane but does not have a prescription for a walking cane.[6] Baxter stopped working her last job in 1987 because her knees hurt and has not been employed since.[7] No doctor has told Baxter that she should avoid any specified activity.[8] Baxter's prescribed medication for arthritis does not help, but she finds that Prilosec and her hypertension medications help some. Her current medications do not carry any side effects.[9]

Baxter estimates she can lift eight pounds, stand for thirty to forty-five minutes, and walk for five or ten minutes. She can sit up to one hour with her feet elevated.[10] Baxter spends her days sitting and watching television. She does a small amount of cooking and cleaning but has never been referred to a psychologist or psychiatrist for any mental problems.[11] Baxter reports she has headaches with pain she rates at seven. Her doctor told her to take Aleve to ease her headache.[12] Baxter used to crochet, but the pain in her hands and wrists makes that pastime too painful.[13]

The ALJ reviewed Baxter's medical records and noted treatment for stomach pain, which her doctor found in June, 2007, was caused by an incarcerated umbilical hernia. Also in June, 2007, Baxter underwent a consultative examination by Dr. Sam Banner.

---

[5] R. at 129.
[6] R. at 30.
[7] R. at 31-32.
[8] R. at 35.
[9] R. at 35-36.
[10] R. at 36.
[11] R. at 37-38.
[12] R. at 42-43.
[13] R. at 43-44.

Other than obesity, Dr. Banner reported no significantly abnormal clinical findings. Baxter weighed 346 pounds. His diagnosis was chronic right knee and foot pain by history, untreated hypertension, panic attacks by history, umbilical hernia, and morbid obesity. Her corrected vision was noted but not deemed problematic.[14] Dr. Mark Dean began treating Baxter in July, 2007 for morbid obesity, hypertension, bronchitis, and pain in her knees, back, and ankles. Dr. Dean diagnosed degenerative osteoarthritis and prescribed anti-inflammatory medication and a muscle relaxant. He also recommended weight loss and an exercise program. Baxter did not make any significant complaints of back, knee, or foot pain until July, 2008. At that time she was seen by Dr. Dean's colleague, Dr. Charles Paulk, regarding her complaint of back pain for three days. Dr. Paulk diagnosed right sacroiliitis. Dr. Faulk also diagnosed Baxter's left heel pain as plantar fasciitis in September, 2008.[15]

A residual functional capacity (RFC) assessment was completed by a State Agency "Single Decision Maker" on July 5, 2007.[16] The assessment determined Baxter can lift and carry ten pounds frequently and twenty pounds occasionally; that she can stand/walk up to six hours during an eight-hour day; that she can sit for six hours during an eight-hour day; that her ability to push and/or pull is unlimited, except by her ability to lift and/or carry; and that she can occasionally perform all postural actions. Baxter was forbidden to climb a ladder/rope/scaffold, and exposure to unprotected heights or machinery. The SDM noted that a doctor saw and recorded that Baxter could get on/off

---

[14] R. at 202.
[15] R. at 16.
[16] R. at 205-212.

the exam table without difficulty, had motor of 4/5 throughout, and had a normal neurological exam. Further, the SDM consulted with Dr. Shugerman who advised a light RFC.[17]

A vocational expert (VE) testified during Baxter's hearing. The ALJ began questioning with a hypothetical which corresponded to the RFC assessment from the State Agency. The VE opined that a person with the RFC would be able to perform light, unskilled work, and that several jobs were within the abilities of such a person.[18] The ALJ modified the hypothetical by limiting the person's ability to lift ten pounds occasionally, to sit up to six hours, and stand/walk up to two hours. The ALJ further imposed "moderate restrictions in concentration, persistence, or pace translating into the mental residual functional capacity to understand, remember, and carry out short, simple instructions." The VE responded that the hypothetical described sedentary, unskilled work, and that several occupations available in the national economy were appropriate for that category. Listed occupations were assembler, hand packager, and operator.[19] Baxter's counsel asked whether a person could elevate one's feet when performing any of the listed jobs, and the VE said they could not. The VE did state that a person who uses a cane could perform the sedentary occupations.

The ALJ found Baxter is severely impaired by obesity, osteoarthritis of the right knee, degenerative arthritis of the hip and back, and left foot pain, uncertain etiology. The ALJ further found that the medical evidence for Baxter's complaints of arm, wrist,

---

[17] R. at 206-07; 209.
[18] R. at 45-46.
[19] R. at 46-47.

and hand problems did not support a finding that these problems present significant work-related limitations, and are therefore classified as non-severe.[20]

The ALJ found "no evidence of record" to support Baxter's claim that she has borderline intellectual functioning or any other mental impairment because Baxter graduated high school in regular classes, has no history of mental health treatment, and did not allege mental health problems.[21]  The ALJ also cited Baxter's testimony that she cannot work because of the physical limitations she presented to the ALJ during the hearing.[22]  The ALJ found Baxter's combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[23]

The ALJ found Baxter's physical RFC encompasses sedentary work in that she can lift up to ten pounds occasionally; sit for about six hours in an eight-hour workday; stand and/or walk up to two hours in an eight-hour workday; occasionally climb stairs or ramps; never climb ropes, ladders, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; rarely reach overhead with either upper extremity; and should avoid all exposure to hazards and unprotected heights.  Baxter was found to have moderate restrictions in concentration, persistence, or pace, which limits her to understanding, remembering, and carrying out short simple instructions.[24]  The ALJ noted that the record did not contain any inconsistent RFC opinions from treating physicians, and found the

---

[20] R. at 15, 16.
[21] R. at 17.
[22] R. at 38.
[23] R. at 17-18.
[24] R. at 18-19.  The reduced ability to concentrate was specifically attributed to pain and discomfort rather than mental limitations.

State Agency RFC assessment to be the most probative evidence for purposes of establishing Baxter's RFC.[25] The ALJ gave Baxter "the benefit of the doubt" as to her testimony of difficulty in lifting heavy objects, prolonged standing, and walking, as these complaints are supported by her medically documented obesity and osteoarthritis.[26] In support of the RFC determination, the ALJ wrote that no treating or examining physician ever placed restrictions on Baxter's activities, and stated the sedentary RFC was designed to accommodate mild to moderate pain and discomfort (and reduced concentration abilities attributable thereto), and obesity. The ALJ found the medically documented obesity, osteoarthritis, degenerative arthritis, and foot pain supported some functional limitations and pain, but not to the extent claimed by Baxter. The ALJ discredited Baxter's testimony because of the lack of physician visits appropriate for the level of pain claimed, her wide array of activities of daily living, conservative care by her primary care physician, lack of prescription for a cane, and failure to follow medical advice to lose weight, which would ease her back, leg, and foot pain. Specifically, the ALJ notes that the record did not document any visits to Dr. Paulk after September, 2008, and that Baxter was afforded additional time to submit medication documentation after the January, 2009 hearing.[27]

Finally, the ALJ noted that Baxter's impairments do not permit her to perform the full range of sedentary work, but the testimony by the VE identified occupations that

---

[25] R. at 18.
[26] R. at 19.
[27] R. at 19-20.

suited her RFC.[28] The finding that Baxter can perform the sedentary work identified by the VE led the ALJ to conclude she is not entitled to disability benefits under the Act as of May 12, 2009.[29]  Baxter submitted an opinion letter, dated July 16, 2009, to the Appeals Council on August 7, 2009.  The letter is an opinion from Dr. C. Ted Paulk, a treating physician, that Baxter is unable to maintain gainful employment.[30]

### III.  ISSUES

Baxter raises four issues for judicial review:

1.  Whether the ALJ's RFC finding is based on substantial evidence;

2.  Whether the new and material evidence submitted to the Appeals Council warrants remand ;

3.  Whether the ALJ failed to properly evaluate Baxter's mental impairments; and

4.  Whether the ALJ erred as a matter of law by failing to properly consider Baxter's visual limitations.

### IV.  DISCUSSION

**1. The RFC finding is supported by substantial evidence.**

Baxter argues the ALJ RFC finding is not supported by substantial evidence for three reasons.  First, Baxter argues the ALJ improperly relied on the absence of an RFC opinion by her treating physician; second, that the finding is inconsistent with her testimony; and third, the ALJ improperly relied on the RFC assessment by the non-

---

[28] R. at 21.
[29] R. at 21-22.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).
[30] R. at 255-56.

physician State Agency medical consultant. The Commissioner responds that the record provided substantial evidence for the ALJ's determination.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). It is an ALJ's duty to determine a claimant's RFC. An ALJ evaluates medical statements "in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Social Security Administration*, 223 Fed.APpx. 915, 923 (11th Cir. 2007), citing *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). Baxter first asserts the ALJ improperly relied on the absence of any limitations on her activity by a treating physician. The absence of restriction is one type of evidence that an ALJ can consider in making an RFC determination. *Green, id*. The ALJ did not rely entirely on the absence of an opinion because the ALJ cited other reasons for his ultimate RFC finding, i.e., dearth of medical treatment, conservative treatment for pain, no evidence that a cane is medically necessary, and physician's unheeded instructions to lose weight (and therefore alleviate pain attributable to obesity).

Baxter's second argument is that the sedentary RFC is inconsistent with her testimony. The RFC would permit Baxter to stand and/or walk for up to two hours in the course of an eight-hour day, while Baxter's testimony was that she can stand for 30-45 minutes, and walk for five or ten minutes. The ALJ addressed the credibility of Baxter's testimony by stating that she experiences limitations and pain from obesity, osteoarthritis, and degenerative arthritis, but not to the extent claimed, due to the factors cited above.

Again, the ALJ noted that the record did not document any visits to Dr. Paulk after September, 2008, despite Baxter's claims of extreme pain.  The ALJ relied on the objective medical evidence in the record to reach an RFC determination.  One example of this was the ALJ's specific reference to designing a sedentary RFC that gave Baxter the benefit of the doubt regarding medically documented obesity and osteoarthritis.[31]  The Court also notes Baxter's testimony that her doctor recommended she take Aleve, an over-the-counter medication, for pain.

Baxter's final argument against the RFC finding is that the ALJ improperly relied on the RFC assessment by the non-physician State Agency medical consultant.  The Court has carefully considered the ALJ's statement regarding the RFC assessment by the "Single Decision Maker."[32]  The Commissioner aptly notes that the ALJ did not adopt the assessment, but simply stated that it is the "most probative opinion evidence of record for purposes of establishing" Baxter's RFC.  The ALJ did not find Baxter can work at the "light" level as determined by the State Agency, but narrowed her RFC to less than the full range of sedentary work.[33]  The record simply shows that the ALJ considered the assessment as a starting point for the RFC determination, but crafted the final findings by applying Baxter's credible testimony.  The decision linked all RFC restrictions to the conditions which caused the respective limitations on Baxter's ability to work – pain, discomfort, and difficulty in overhead reaching attributable to arthritis and obesity.[34]  Each set of restrictions is supported by a discussion of the medical evidence which

---

[31] R. at 18-19.
[32] R. at 205-212.
[33] R. at 206; 18, 21.
[34] R. at 19.

12

supports the ALJ's findings.  The Court finds the RFC findings are fully supported by the medical records.

Although the Court is satisfied that the RFC determination is supported by substantial evidence, a subsidiary issue remains. Baxter argues that a remand is appropriate so that the examining physicians can provide medical source statements. Essentially, Baxter suggests that the ALJ did not develop a full and fair record.  Again, it is Baxter's duty to prove disability and to produce evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Here, there is no claim that the records from Baxter's treating physicians were incomplete, or lacking in any way. The records simply did not pronounce her "disabled," and the lack thereof was noted by the ALJ's decision.

The record supports the ALJ's RFC determination.  The ALJ did not improperly rely on the absence of an opinion of disability from a treating physician, did not disregard Baxter's credible testimony, and correctly used the RFC assessment by a lay State Agency examiner.  Further, the ALJ's finding was substantially supported by the medical evidence in the record.  Accordingly, the Court finds no error as to this issue.

> **2. The Appeals Council correctly considered the latter opinion from Baxter's treating physician.**

Baxter argues the Appeals Council should have remanded her case upon its review of an updated statement from her treating physician.  The Commissioner responds that the Appeals Council did not err because the statement was unreliable.

Dr. Paulk's opinion of July 16, 2009 purports to rule out Baxter's ability to perform any gainful employment. Baxter argues that the opinion is consistent with the medical record, and renders the denial of benefits erroneous. The Commissioner argues that Baxter does not meet the standard for remand upon her claim of error by the Appeals Council. In *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998), the Eleventh Circuit held that evidence submitted to the Appeals Council justifies a remand where a plaintiff shows "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323.

The Commissioner argues the letter is a cumulative report of Baxter's known medical conditions at the time of the ALJ's decision, does not relate to the period at issue because it is dated two months after the ALJ's decision, and is not a medical opinion because it simply states that she is unable to work due to arthritis and obesity. The Commissioner also notes that Baxter has not demonstrated why the letter was not submitted to the ALJ (who specifically granted additional time for Baxter to submit additional medical documentation from Dr. Paulk).[35]

The Court finds that none of the *Falge* criteria are present in this case such that remand by the Appeals Council was appropriate. The evidence does not present new or noncumulative information concerning Baxter's medical conditions, the administrative result is unlikely to have changed result if the Appeals Council had remanded the case for

---

[35]R. at 19, 49.

14

additional consideration by the ALJ, and Baxter has not shown any reason why the letter could not have been presented to the ALJ in a timely fashion. Further, the Court finds the opinion was only obtained after the ALJ issued a decision finding Baxter capable of sedentary work, and that the opinion is therefore less persuasive. *See Weetman v. Sullivan,* 877 F.2d 20, 23 (9th Cir. 1989). Thus, good cause exists to discount the opinion, and the Appeals Council did not err in affirming the ALJ's decision.

### 3. **Substantial evidence supports the ALJ's finding that Baxter is not mentally impaired.**

Baxter argues the ALJ finding that she is not mentally impaired is not supported by substantial evidence. The Commissioner responds that Baxter did not demonstrate a medically determinable mental impairment.

Baxter's claim is primarily grounded in a note by the Disability Field Office that she seems "mentally slow," needed assistance to complete her benefits application, and gave a history of panic attacks during a consulting examination.[36] Baxter argues the ALJ should have obtained an opinion from a qualified psychiatrist or psychologist regarding her mental condition. The Commissioner cites the ALJ's discussion of the issue, which noted Baxter finished high school in regular classes, no history of mental health treatment, and statement that she could not work because of physical problems.

Baxter does not have a history of mental health problems. Baxter said during her hearing that she had given the ALJ all of her reasons for her inability to work.[37] Baxter

---

[36] R. at 126, 147, 201.
[37] R. at 38.

15

told the ALJ that she attended regular classes in high school.[38] Her argument that the ALJ should have investigated the existence of a mental impairment is correctly addressed by the Commissioner's response that the cases cited by Baxter are distinguishable because records from treating and consulting physicians in those cases indicated that mental impairments could be an issue. Here, Baxter relies upon her own report of panic attacks and field officer comments on her benefits application. As stated above in response to Baxter's claim that the ALJ should have sought additional evidence on this point, it is her duty to prove disability and to produce evidence in support of her claim. *Ellison*, 355 F.3d at 1276. She has not done so and the claim of mental impairment does not present grounds for reversal.

### 4. The ALJ did not err in his consideration of Baxter's vision.

Baxter argues the ALJ did not consider her visual limitations. The Commissioner responds that Baxter did not demonstrate a medically determinable visual impairment.

Baxter's argues the ALJ should have included her decreased vision in her RFC evaluation, as it would impact her ability to read or work with small objects. She contends she met her threshold burden of showing that her decreased vision is severe. Her corrected vision was noted in Dr. Banner's consultative exam report, but was not included as a diagnosed factor for consideration in her benefits application.[39]

Again, it is a claimant's burden to prove disability and to produce evidence in support of that claim, which was not met here by Baxter. *Ellison*, 355 F.3d at 1276. The Court agrees with the Commissioner's argument that there is no indication in the record

---

[38] R. at 30.
[39] R. at 204.

16

that Baxter's vision would prevent her from performing the occupations identified by the VE. The questions asked by Baxter's counsel during the hearing questioned whether the occupations required the full use of both hands, a worker's ability to elevate feet during the course of the workday, and the use of a cane.[40]

Neither Baxter, nor the administrative record in her case, raised any grounds for visual impairment as a basis for reversal. The ALJ did not err by failing to discuss the impact of her vision in her RFC.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.


DONE this 30th day of December, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[40] R. at 48-49.